```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   FELIX GARCIA,

 4                Plaintiff,

 5           v.                              11 Civ. 8721 (JGK)

 6   C.O. L. CARRINGTON and C.O. B.
     WHITE,
 7
                  Defendants.
 8
     ------------------------------x
 9
                                             New York, N.Y.
10                                           December 21, 2012
                                             11:55 a.m.
11
     Before:
12
                     HON. JOHN G. KOELTL,
13
                                             District Judge
14
                          APPEARANCES
15
     FELIX GARCIA
16       Pro Se Plaintiff

17   ATTORNEY GENERAL FOR THE STATE OF NEW YORK
          Attorney for Defendants
18   BY:  FREDERICK HONGYEE WEN

19

20

21

22

23

24

25
```

1               (In chambers)

2               THE DEPUTY CLERK:  Garcia versus Carrington.  All

3     parties please state who they are for the record.

4               MR. WEN:  Good morning, your Honor.  This is Frederick

5     Wen from the Attorney General's office on behalf of the

6     defendant.

7               MR. GARCIA:  Good afternoon, your Honor.  This is

8     Felix Garcia on behalf of the plaintiff.

9               THE COURT:  Hi.  This is Judge Koeltl.

10              I have you on speakerphone.  I am here with a court

11    reporter, so we are keeping a transcript.  I am also here with

12    my deputy and one of my law clerks.

13              So what is the status of the case, please?

14              MR. WEN:  Yes, your Honor, this is Frederick Wen.  I

15    believe I have spoken to Mr. Garcia earlier just to inform him

16    that I had received, been able to get almost all of the

17    documents ready to produce to Mr. Garcia, including his inmate

18    file and disciplinary records.  The only thing I was missing

19    was his medical records, and Sing Sing has just informed me

20    earlier this week that they're sending it out and I should get

21    it today.  As soon as I get that I am going to produce that to

22    Mr. Garcia along with my affirmative discovery demands.  And as

23    soon as I receive those, I can schedule or send a notice for

24    his deposition.

25              THE COURT:  OK.  I haven't entered a scheduling order

1   yet, right?
2              MR. WEN:  I do not believe so, your Honor.
3              THE COURT:  So it would be useful for me just at this
4   point for the parties to briefly tell me about the nature of
5   the case and what the extent of the discovery is that they
6   think will be required.
7              Mr. Garcia, when I have a pro se, I let the plaintiff,
8   of course, if you wish, go first; or let the defense counsel go
9   first, and then you can respond.  Whichever way you want,
10  Mr. Garcia.
11             MR. GARCIA:  I will let the defense go first.
12             THE COURT:  OK.  Mr. Carrington.
13             MR. WEN:  Sorry, your Honor.  This is Mr. Wen.
14             THE COURT:  Yes.  I'm sorry.  Mr. Wen.
15             MR. WEN:  OK.  Yes, I believe, your Honor, this case
16  is relatively straightforward excessive force incident that
17  happened at Sing Sing in I believe the end of 2010.  Mr. Garcia
18  I believe -- hold on a second -- I believe claimed that while
19  being asked to take off his belt by one of the defendants,
20  Officer White, then was asked to have, I think he was asked
21  to -- was being frisked by the other officer, Carrington, and
22  claimed that there was, he was placed against I think a
23  radiator, against a wall and slightly burned his arms.  And
24  then the officer proceeded to maybe choke him around the neck
25  for a little bit before the strip frisk ended.

1          I believe he was sent to medical after that.  An
2    inmate injury report was taken, medical reports were taken, and
3    there was, I believe there was either a use of force or a
4    inspector general's file, an inspector general's investigation
5    taken in the case.
6          So, in terms of discovery, we have the medical records
7    that I expect to get hopefully today.  I have the inspector
8    general's file that I will be sending out.
9          There is also a disciplinary record because I believe
10   one of the defendants, Officer White, issued an inmate
11   misbehavior report to Mr. Garcia.  And that was appealed, and I
12   believe at least one of the violations was upheld.  And there
13   was also a grievance filed by Mr. Garcia, which will also be
14   produced to Mr. Garcia.  I believe that, along with some of the
15   inmate file, should be the extent of the document discovery.
16         THE COURT:  OK.  What were the findings of the
17   inspector general?
18         MR. WEN:  The findings of the inspector general, the
19   allegations were unsubstantiated.  Officer Carrington denied
20   assaulting him, and no other staff witnessed any assault.
21         He did receive a misbehavior report written by Officer
22   White for refusing a direct order, and there were no other
23   witnesses to substantiate his allegations?
24         THE COURT:  How many depositions do you contemplate?
25         MR. WEN:  I believe just the deposition.

1        THE COURT:  The plaintiff?

2        MR. WEN:  The plaintiff, yes.

3        THE COURT:  All right.  Mr. Garcia, I'm perfectly
4   prepared to listen to anything that you would like to tell me
5   about the case and what I would do then is to set a discovery
6   cutoff date.

7        MR. GARCIA:  All right.

8        Would you like me to proceed now, your Honor?

9        THE COURT:  Yes.  Anything you would like to tell me,
10  you can do that now.

11       MR. GARCIA:  All right.  As far as the factual issues,
12  I will just explain the story, how things developed.  I was
13  walking through the A block, HBA magnetometer.  As I proceeded
14  through the magnetometer, I was told to put my belt on in a
15  certain spot.  As I was complying, I believe I said something,
16  I asked a question, Why can't I go in and do it?

17       So she, Officer White, gets real hostile and tells me
18  to go on the wall.  So officer Carrington then comes over,
19  starts frisking me.  This is by the phone areas, right next to
20  the gym.

21       So my gallery officer is there at the time.  He's the
22  second gallery officer.  He does all the searches.  At that
23  time he had left, the gym run was over.  It was another
24  officer.  I can't remember his name.  I don't even know his
25  name.  Officer B. White and Carrington, they then bring me to

1    under the mess hall bridge.  That's right under the galleries,
2    it's in between the galleries, so there is no view, I guess a
3    vertical view you could say.
4              So at that point in time they had me on the wall, and
5    my arms are on the wall, but there's the pipes come up about
6    five to six feet.  So as I am stretching out to hold my hands
7    out, my arms are getting burnt.
8              So at this time Officer Carrington is making me say a
9    bunch of yeses and nos for Officer White.  At that time, after
10   I was done saying yes or no, I sighed at him, and he grabs my
11   sweater and starts to choke me.
12             So I then go upstairs, nobody escorted me upstairs.  I
13   went to my gallery officer J. Cruz, and I told him about the
14   incident.
15             Sergeant Casanis was up doing an inspection of the
16   bench.  He comes down from where he's at, and then he comes to
17   speak to me, takes me to medical.
18             There's burn marks on my arm.  I had a sweater on, so
19   there wasn't really no blistering, but I had red marks on my
20   neck that is consistent with physical force.
21             And pictures were taken by a lieutenant, an injury
22   report was written.  And the key thing is, is that in the
23   misbehavior report, it is conflicting testimony because officer
24   B. White says -- I don't want -- I can't say it verbatim
25   because I don't think I have that the paperwork in front of me,

1   the actual ticket.  But she says either she escorted me
2   upstairs or another officer escorted me upstairs.
3           My gallery officer states that, no, he seen nobody
4   bring me up.  And the times are a little off.  But the second
5   gallery officer I guess in this -- can you just bear with me
6   one second.  I have the paper right here.
7           All right.  This is staff conduct.  It's in the
8   initial petition that I filed, the complaint.  It says
9   investigation done by Lieutenant Barns -- I guess it's a
10  synopsis of all the officers' testimony.
11          My gallery officer, Brown, states that after I was
12  searched, he left, he left to go to his other post that he was
13  designated to go to.
14          But Officer White says that after she frisked me, she
15  immediately brought me upstairs, and the officers were still
16  there.  But it just doesn't make sense because no officers were
17  there, and it happened after the gym run was over.  She said
18  that she brought me upstairs when the rec was still running.
19  So that is a part that is not consistent with the officers'
20  testimony.
21          Other than that, as far as discovery, I just would
22  like, if I could -- I don't know if it's relevant or pertinent
23  to my issue, but the past history of the officers, so I can
24  show that there is a common pattern in this man's history as an
25  officer.

1           THE COURT:  What is it that you want, Mr. Garcia?

2           MR. GARCIA:  I already spoke to Mr. Wen earlier.  He

3   said he was going to provide me with the medical records.

4           THE COURT:  Right.

5           MR. GARCIA:  That is a major part of it as well.

6   Because Mr. Wen is actually from my disciplinary.  I am not

7   going to assume anything at this time, but I would just like

8   Mr. Carrington's background and Ms. White's background on any

9   previous assaults, grievances and so forth.

10          THE COURT:  OK.

11          MR. GARCIA:  Their history.

12          THE COURT:  All right.  Mr. Wen?

13          MR. WEN:  Yes, your Honor.  I believe under Rule 33.2,

14  there is a limited amount of disciplinary history for those

15  officers that I have requested.  If there is anything there, I

16  will have that produced.

17          But beyond that, I don't know exactly what else

18  Mr. Garcia may be looking for.

19          THE COURT:  I think that is what Mr. Garcia is looking

20  for.  Certainly whatever is required by the Rule has to be

21  produced.  That would include substantiated reports of prior

22  use of force.  Right?

23          MR. GARCIA:  Yes, your Honor.

24          THE COURT:  And that's what you will certainly

25  produce; right, Mr. Wen?  I am not attempting to limit the

1  documents that otherwise are producible, but it seems plain to
2  me that is what Mr. Garcia is looking for and that that would
3  be producible, right?  So you will look for that?
4          MR. WEN:  Yes.  I believe that is what I have been
5  looking for, and I believe I have obtained that.
6          THE COURT:  OK.  What is the answer to that by the
7  way, if you know at the moment?
8          MR. WEN:  I don't have with me right now.  But I
9  believe I can get it and have it, have anything sent to
10 Mr. Garcia.
11         THE COURT:  OK.
12         It sounds as though you all should be able to complete
13 discovery in about four months.  Does that seem reasonable to
14 both of you?
15         MR. GARCIA:  That is fine with me, your Honor.
16         MR. WEN:  Yes, it does to me, your Honor.
17         THE COURT:  OK.  So as part of the scheduling order I
18 am also supposed to make sure pleadings are closed.  So no
19 additional parties or causes of action after January 11.
20         No additional defenses after January 28.
21         Complete discovery by May 3.
22         Dispositive motions by May 24.
23         Joint pretrial order, requests to charge, voir dire
24 requests, motions in limine by June 14.
25         Ready trial 48 hours' notice on and after June 28.

1          This is a jury trial, right?

2          MR. GARCIA:  Yes, sir.

3          MR. WEN:  Yes, your Honor.

4          THE COURT:  I would imagine that this trial should

5     last about three days, right?

6          Is that about right?

7          MR. WEN:  That is about right, your Honor, yes.

8          THE COURT:  OK.

9          As you will see in the order that I issue, the time

10    for the joint pretrial order and the ready trial gets adjourned

11    if there is a dispositive motion until some period after the

12    dispositive motion is decided.

13         Now, Mr. Garcia, have you made a demand on the

14    defendants for what you would settle the case for?  I don't

15    have to know what it is.  I don't want to get into that.  I

16    don't get involved in settlement discussions.

17         MR. GARCIA:  All right.

18         THE COURT: By a demand I don't mean simply what you

19    may have put in your complaint, which may ask for a lot more

20    than you would reasonably expect to settle the case for.  I am

21    talking about a realistic settlement demand.  It is one thing

22    to put something in a complaint.  It is another thing to say in

23    settlement discussions that you would accept another amount in

24    order to settle the case.

25         So have you made a realistic settlement demand on the

```
 1  defendants?
 2          MR. GARCIA:  Yes.  I believe so, your Honor.
 3          THE COURT:  OK.
 4          Mr. Wen, is that right?  Have you gotten a settlement
 5  demand which you have taken to your principals and asked can
 6  this case be settled for this?
 7          MR. WEN:  Sorry, your Honor.  I am just trying to make
 8  sure I have received it.
 9          THE COURT:  It can be done orally, too.
10          MR. WEN:  I don't see it in the file.  Mr. Garcia, do
11  you recall when you sent it?
12          MR. GARCIA:  Oh, excuse me.  I am just new to this.
13  The only demand that I believe I put was in the initial
14  petition.
15          THE COURT:  OK.
16          MR. GARCIA:  That is the --
17          THE COURT:  OK.
18          MR. GARCIA:  It is in the last page.
19          THE COURT:  That is what I was referring to.
20          MR. GARCIA:  OK.
21          THE COURT:  People usually put in amounts which are
22  the most that they could dream of obtaining as a result of a
23  litigation.  That's different from a realistic demand as to
24  what they would take to settle the case.
25          You really should make that demand on the defendant.
```

1          MR. GARCIA:  All right.
2          THE COURT:  You can just tell Mr. Wen.  You don't even
3     have to put it in writing.
4          MR. GARCIA:  All right.
5          THE COURT:  So that Mr. Wen can take it to his
6     principals to find out whether the case can be settled, unless
7     you tell me, Mr. Wen, that the policy of the office is not to
8     settle these cases?
9          MR. WEN:  No, that is not the case your Honor.  We
10    would just prefer a written demand.  But if it is going to be
11    the same demand as the one Mr. Garcia made in his complaint, I
12    would just like to know that.
13         THE COURT:  The two of you can talk.
14         MR. GARCIA:  Yes.
15         THE COURT:  In fact, I think what I will do is I will
16    refer it to the magistrate judge for purposes of settlement to
17    see whether any settlement can be worked out at the outset, OK?
18         MR. GARCIA:  All right.
19         THE COURT:  The magistrate judge will probably talk
20    independently to both of you, and I will leave it up to the
21    magistrate judge to do that.
22         Would the parties agree to have the magistrate judge
23    try the case?  Before you answer that, Mr. Garcia, Mr. Wen,
24    does the state have any policy on that?
25         MR. WEN:  Well, your Honor, we would have to evaluate

1   it at that point.  But I think initially until we know who the
2   magistrate judge is and all the discovery is we cannot make
3   that decision.
4              THE COURT:  Well, it's Magistrate Judge Francis.
5              But you don't have all the discovery.
6              MR. WEN:  Right.  I think we would have to wait to
7   evaluate that.
8              THE COURT:  All right.
9              MR. GARCIA:  Excuse me.  Your Honor, may I speak?
10             THE COURT:  Sure.
11             MR. GARCIA:  It may be this is just, I don't know,
12  coincidence, but I have a pending habeas corpus in and Justice
13  Francis is the magistrate judge on that case as well.
14             Is that a conflict of any sort?  I am just asking.
15             THE COURT:  I don't think so.
16             MR. GARCIA:  All right.
17             THE COURT:  You can raise it with Magistrate Judge
18  Francis, and if Magistrate Judge Francis thinks it is a
19  conflict, he will recuse himself and it will be sent to another
20  magistrate judge.  If the parties want to raise it specifically
21  as an issue, you're welcome to raise it with Magistrate Judge
22  Francis.  No one is going to be prejudiced by just raising that
23  as an issue.  But I would raise it with Magistrate Judge
24  Francis.
25             MR. GARCIA:  Yes, your Honor.

1               THE COURT:  OK.

2               MR. GARCIA:  Briefly, real quick, there's just two

3     more issues I would like to bring to your attention, your

4     Honor.

5               THE COURT:  OK.

6               MR. GARCIA:  The first one is I am currently back and

7     forth to court because I have a 440 motion pending.

8               THE COURT:  Right.

9               MR. GARCIA:  The hearing was just concluded.  I go

10    down to court on -- I will leave the facility on January 7.

11    The Court date is actually January 10 in part 31 in front of

12    Lewis Bart Stone.  I am waiting for the prosecution to respond

13    to the motion I filed, and then Justice Stone will make the

14    decision.

15              I don't want to put anything on it, but the way the

16    hearing goes, the way the hearing has went, I feel pretty good

17    about it.  I may not return back to this facility.  So I don't

18    want to complicate things any further, but I see you set a date

19    for me to file something in January, but I will not be here.  I

20    don't know how long I will be down there.  I may come back if

21    the hearing does not, you know, I don't get what I was

22    expecting out of it.  But I just wanted to let you know that is

23    going to be an issue there.

24              THE COURT:  You don't expect to file any amended

25    complaint at this point adding any additional parties or

1   claims, do you?
2              MR. GARCIA:  I believe I sent you a letter, I just
3   received it back, in regards to a retaliation issue.  I had
4   filed a grievance.  But in the grievance I did not put that,
5   what was said about, so you like filing lawsuits, on the actual
6   officer.  I wasn't actually thinking about amening it and doing
7   that.  But I just wanted to bring it to your attention because
8   I'm constantly being harassed by the specific officer, and I
9   was just -- things had got out of hand, but due to
10  circumstances that I have known the person, I was just asking
11  that a call can be made to -- I don't want to amend the
12  petition.  I don't want to make anything more than what it is,
13  but, you know --
14             THE COURT:  So you don't intend to amend the petition?
15             MR. GARCIA:  You see, this is the thing.  I didn't put
16  it in the -- I went to the grievance the other day, and the
17  actual, the part where the officer had told me you like filing
18  lawsuits, I did not put that in the grievance.  The grievance,
19  at the time I was thinking it is not for something like that.
20  But now that I realize that I should have preserved it.  It's
21  probably too late now.  So if I filed another complaint, if I
22  do decide to amend it, I believe Mr. Wen would raise it as a
23  prejudicial issue because it was not filed initially.
24             THE COURT:  You can talk to Mr. Wen about it.
25             MR. GARCIA:  All right.

1            THE COURT:  As I endorsed the letter that Mr. Wen sent

2    to me, if you want to file an amended complaint, you have to

3    ask for a conference with the Court before filing an amended

4    complaint.  So you should ask for a conference.  I will, as I

5    noted in my endorsement, first of all, you do have to exhaust

6    remedies in the prison grievance system.

7            And, second, the defendants do have the -- I mean,

8    just because you want to file an amendment doesn't mean -- and

9    I have said, you know, you have to exhaust.  There may be one

10   or more defenses to any new claims that you wish to raise, and

11   they may or may not be appropriate for this case.  None of that

12   have I ruled on.  Do you understand?

13           MR. GARCIA:  Yes.

14           THE COURT:  But I'll give some more time for adding

15   parties or claims just because you're going to be traveling, so

16   I will extend that date until January 25.

17           And I will extend the date for the response to adding

18   defenses to February 11.

19           I caution you about a couple of things.

20           First, if you want to file an amended complaint,

21   you've got to ask for a premotion conference.  You have to ask

22   for a conference with the Court before doing that.

23           And, second, you say you are going to be absent from

24   the facility for some time, and you say you may not return

25   back.  You have an obligation to keep the Court advised of any

1   change of address.  So if you're going to be away for any
2   significant period of time, you have to file a paper with the
3   Court indicating what your new address is.  Otherwise, the
4   papers are going to go to the facility which you're at now and
5   others will have no way of knowing whether you're getting the
6   papers.  It's a reason to dismiss the complaint for failure to
7   prosecute if we can't get ahold of you.
8            If you don't keep current with respect to your
9   address, that's a basis to dismiss the case without prejudice
10  for failure to prosecute.  You've got to keep the Court advised
11  by a letter with copy to the other side if you have a new
12  address.
13           Do you understand?
14           MR. GARCIA:  Yes, your Honor.
15           That was my intentions.
16           THE COURT:  OK.
17           MR. GARCIA:  I was going to keep you abreast.  It's
18  just a lot of, all of my legal work.  It's not a problem with
19  me bringing the legal work down there.  It's just sometimes
20  legal work gets lost in transit, but I will make every effort
21  to bring copies down with me.
22           But if it's just by some happenstance that if I lose
23  the paperwork, I would just inform Mr. Wen to forward me
24  anything that is relevant.  Once I know the outcome of the 440
25  motion, I will advise the Court and Mr. Wen of the current

Cclngarc                     Telephone Conference

1  status.
2              THE COURT:  OK.
3              You need to keep the Court apprised of your current
4  address where materials can be sent to you.
5              MR. GARCIA:  All right.
6              THE COURT:  Anything further for me today?  No?
7              MR. WEN:  No, I don't believe so, your Honor.
8              THE COURT:  OK.  Great.
9              MR. GARCIA:  All right.
10             THE COURT:  Thank you, all.
11             MR. GARCIA:  Thank you.  Have a good day, your Honor.
12             THE COURT:  You too.
13             MR. WEN:  Thank you very much.
14             THE COURT:  Bye.
15             (Adjourned)
16
17
18
19
20
21
22
23
24
25